UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICH LEBEAU,  
        Plaintiff,

Case No. 10-12624

Honorable Patrick J. Duggan

v.

MICHIGAN DEPARTMENT OF HUMAN
SERVICES, JENNIFER HENDERSON,
SUE MALBURG, KIM IRWIN, SARAH
MEDDAUGH, CHIQUITA FORD-WHITE,
MISTY WOJNAROWICZ,
        Defendants.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 19, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

On July 1, 2010, Erich Lebeau ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that his statutory and constitutional rights were violated when social workers employed by the State of Michigan placed his daughter into foster care. Named as defendants are the Michigan Department of Human Services ("DHS") and several of its employees, including Jennifer Henderson, Sue Malburg, Kim Irwin, Sarah Meddaugh, Chiquita Ford-White, and Misty Wojnarowicz. Presently before the Court is Defendants' motion to dismiss, filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on April 15, 2011. The matter has been fully briefed, and the Court heard oral argument on August 18, 2011. For the reasons stated below, the

Court grants Defendants' motion.

## I. Factual and Procedural Background

Plaintiff and his ex-wife Lesley Lebeau[1] separated in April 2007 while they were living in West Virginia. Lesley was allegedly abusing alcohol and prescription drugs at that time. Lesley and the couple's daughter[2] returned to Port Huron, Michigan to live with Lesley's parents. Lesley also had two children from a prior relationship and brought these children with her to Michigan. The couple made several attempts at reconciliation, but these were ultimately unsuccessful.

Lesley subsequently moved out of her parents' home, and spoke regularly with Plaintiff by telephone between April and November of 2007. Plaintiff was apparently unaware that Lesley was neglecting his daughter and her other two children and continuing to abuse both alcohol and prescription drugs. Compl. ¶ 14. Lesley entered a rehabilitation program in November 2007 and allegedly failed to inform Plaintiff of this, although the two continued speaking by telephone.

After her release from the rehabilitation program in December 2007, Lesley allegedly relapsed into drug and alcohol abuse. In December 2007, DHS's section of Children's Protective Services began investigating a neglect complaint against Lesley. Caseworker Jennifer Henderson was assigned to investigate the complaint. Lesley allegedly told Henderson that she did not know how to contact Plaintiff and that Plaintiff

---

[1] This Opinion and Order will refer to Lesley Lebeau, who is not a party to this action, simply as "Lesley."

[2] The child is referred to in the parties' pleadings as "Minor Child C."

had physically abused her during their marriage. *Id.* ¶ 20. Lesley asked Henderson not to contact Plaintiff regarding the neglect complaint. *Id.* ¶ 21. Plaintiff claims that Henderson later learned that Lesley and her mother had Plaintiff's contact information, but made no efforts to obtain it or otherwise notify Plaintiff of the complaint. *Id.* ¶ 23. Between December 2007 and February 2008, Henderson investigated six neglect complaints against Lesley without contacting Plaintiff. *Id.* ¶ 25.

Plaintiff claims that after Lesley's second failed rehabilitation attempt, Henderson recommended placing the children in foster care. Henderson sought permission from her supervisor, Sue Malburg, to take this action. Henderson allegedly told Malburg that Lesley and her mother had Plaintiff's contact information, but Malburg instructed her to institute removal proceedings without contacting Plaintiff. *Id.* ¶ 27. Henderson apparently wrote reports stating that Lesley had spoken to Plaintiff by phone and that Lesley's mother refused to answer Plaintiff's calls or return his messages. Plaintiff claims that Malburg reviewed and signed these reports. *Id.* ¶ 29.

Removal proceedings were initiated on February 27, 2008, and the children were allegedly placed into foster care without notice to Plaintiff. *Id.* ¶ 30. Plaintiff claims that if he had been notified, his daughter could have been placed with him or with his family members living in St. Clair, Michigan. Throughout 2008, Lesley allegedly told Plaintiff that she was "straightening out her life" and that his daughter was with her and doing well. *Id.* ¶ 33. Plaintiff claims that Lesley was instead arrested for drunk driving, twice violated her probation, failed a third rehabilitation program, and lost custody of a child born to her in November 2008.

Soon a new DHS caseworker, Sarah Meddaugh, was assigned to monitor Lesley and the children. In October 2008, Meddaugh asked permission from her supervisor, Kim Irwin, to terminate the parental rights of Lesley and Plaintiff. Irwin allegedly granted permission to institute proceedings, and during November 2008, Meddaugh notified Plaintiff that such proceedings were pending in St. Clair County, Michigan.

Plaintiff, who was at that time living in Virginia, traveled to Michigan in December 2008 to determine why his daughter was in foster care. Meddaugh and caseworker Misty Wojnarowicz allegedly told him that he could not remove his daughter from foster care and that she could only be returned to Lesley because that is who she was taken from. *Id.* ¶ 43. Plaintiff was told that the child was in foster care due to neglect, but the caseworkers allegedly refused to provide any details of their investigation. Plaintiff claims that DHS required him to take a psychological exam and parenting classes so that he could visit his daughter.

Wojnarowicz was apparently assigned to the case at about this time. Plaintiff claims that DHS soon began "an accelerated agenda of multiple counseling programs for mother and children all geared to reunify the children with [Lesley] earlier than recommended." *Id.* ¶ 51. Plaintiff claims that Wojnarowicz's supervisors, Kim Irwin and Chiquita Ford-White, reviewed and signed her reports. Plaintiff asserts that DHS never provided him with assistance or invited him to participate in counseling.

In February 2009, Lesley filed for divorce in St. Clair County Circuit Court, seeking custody of the couple's child. Plaintiff claims that at about this time, he began having supervised visitation with his daughter. He claims that he was often denied visitation by

either Lesley or the foster parents.  In May 2009, Plaintiff's daughter was released from foster care to Lesley after she allegedly had been sober for seven months.  Plaintiff claims that Lesley continued to interfere with his visitation rights.  In response, Plaintiff moved for specific visitation and requested a Report and Recommendation from the St. Clair County Friend of the Court.  Plaintiff claims that the Friend of the Court investigator took several months to complete the Report because DHS failed to timely provide information regarding its investigation.  The Report allegedly failed to find a single factor in his favor, downplayed every negative factor against Lesley, recommended that Lesley be given sole custody, and severely restricted Plaintiff's parenting time.  *Id.* ¶ 63.

Plaintiff filed objections to the Report and Recommendation, and a trial was held during March and April 2010 in St. Clair County to determine custody.  Henderson and Wojnarowicz testified regarding DHS's involvement and supervision of the case.  Plaintiff claims that DHS records were heavily redacted to hide facts that were detrimental to Lesley.  Testimony allegedly confirmed that DHS was aware that Lesley had Plaintiff's contact information, but decided not to contact him.  The Friend of the Court investigator and the DHS caseworkers apparently testified that they made no effort to verify Lesley's allegations of abuse.

After the trial, Circuit Judge James P. Adair awarded Plaintiff and Lesley joint legal and physical custody of the couple's child.  Judge Adair awarded immediate custody to Plaintiff for six weeks in order to reestablish the parental bond.  Judge Adair allegedly commented on the record that he was distressed by Lesley's lies and DHS's complicity in her actions. Plaintiff claims that he has since obtained full custody of his daughter.

Plaintiff filed this action pursuant to §§ 1983 and 1985, asserting the following claims: "Violation of 42 U.S.C. § 1983, Denial of Procedural Due Process" (Count I); "Violation of Procedural Due Process by DHS" (Count II); "Violation of 42 U.S.C. § 1983, Violation of Substantive Due Process" (Count III); "Violation of Substantive Due Process by DHS" (Count IV); "Violation of 42 U.S.C. § 1983, Violation of Equal Protection" (Count V); "Violation of Equal Protection by DHS" (Count VI); "Violation of 42 U.S.C. § 1985, Conspiracy to Violate Plaintiff's Constitutional Rights" (Count VII); "Violation of Federal Law" (Count VIII); and "Violation of Michigan Law" (Count IX). Plaintiff requests damages and an injunction prohibiting further discrimination or violations of the law. Defendants filed their motion to dismiss on April 15, 2011.

## II. Defendants' Motion to Dismiss For Lack of Subject Matter Jurisdiction
### A. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) seeks to dismiss a complaint for lack of proper subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Proper jurisdiction is a requirement in determining the validity of a claim, and as such, Rule 12(b)(1) motions must be considered by a court prior to any other challenges. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1946). Motions to dismiss for lack of proper subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the pleading itself. *Id.* During a facial attack, the court must treat all material allegations in the complaint as true and construe the allegations in the light most favorable to the non-moving party. *Id.* A factual attack, on the other hand,

6

challenges the factual existence of subject matter jurisdiction. *Id.* "On such a motion, no presumptive of truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Defendants have asserted a facial challenge to the Court's subject matter jurisdiction.

## B. Application

Defendants first assert that the Court lacks jurisdiction because this suit is essentially a domestic relations proceeding. Second, they argue that the *Rooker-Feldman* doctrine precludes jurisdiction.

### 1. Jurisdiction Over Domestic Relations Proceedings

Defendants mistakenly assert that jurisdiction is lacking because this case "involves a child custody dispute." Defs.' Br. 14. It is clear that federal courts cannot "issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S. Ct. 2206, 2215 (1992). This does not mean, however, that any suit *involving* such a decree is beyond the federal courts' reach. The Sixth Circuit has rejected Defendants' overly broad reading of the "domestic relations exception" to jurisdiction. In *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), the plaintiff sought a declaration that a state-court divorce judgment was invalid under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The court questioned "whether [the plaintiff's] action is a 'core' domestic relations case, seeking a declaration of marital or parental status, or a constitutional claim in which it is incidental that the underlying dispute involves a divorce." *Id.* at 291. The court concluded that it was the latter, even though a declaration that the judgment was void would impact the marriage status between

7

husband and wife. *Id.* The court held that the plaintiff had only asked the court "to examine whether certain judicial proceedings, which happened to involve a divorce, comported with the federal constitutional guarantee of due process." *Id.* at 292. Although the case "involved" a divorce decree, the Sixth Circuit panel concluded that the domestic relations exception applied only to cases in which the court was asked to *issue* such a decree, not "every case touching and concerning the issuance of a divorce, the award of alimony, or a child custody decree." *Id.* at 292 n.14. Plaintiff contends that he has full custody of his daughter, Pl.'s Resp. Br. 16, and the Complaint does not seek the issuance of a divorce or child custody decree. Plaintiff requests only damages and an injunction prohibiting further discrimination and violations of the law. Thus, while the case involves a child custody dispute, the Court concludes that it does not implicate the domestic relations exception to jurisdiction.

### 2. The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine[3] holds that federal district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005). "[T]he pertinent inquiry . . . is whether the 'source of the injury' upon which plaintiff bases his

---

[3] The *Rooker-Feldman* doctrine takes it name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983).

8

federal claim is the state court judgment." *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (quoting *McCormick v. Braverman*, 451 F.3d 382, 394-95 (6th Cir. 2006)). "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick*, 451 F.3d at 393.

*Rooker-Feldman* does not apply to this case. Plaintiff complains of actions taken by DHS caseworkers long before the state court issued any child custody decree. He argues that the caseworkers' actions, rather than the state court judgment, caused him injury. This lawsuit does not invite review of the judgment, as Plaintiff does not request any change in his daughter's custody situation. Rather, he seeks damages for discriminatory treatment and the failure to notify him of proceedings that would affect his daughter. Accordingly, *Rooker-Feldman* does not divest the Court of subject matter jurisdiction to hear this suit, and Defendants' motion to dismiss for lack of subject matter jurisdiction must be denied.

### III. Defendants' Motion to Dismiss for Failure to State a Claim

**A. Standard of Review**

Defendants' motion states that it is filed pursuant to Federal Rule of Civil Procedure 12(b)(6), but such a motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Because Defendants had previously filed answers, the motion is improperly raised. However, such a motion may be construed as a motion for judgment on the pleadings under Rule 12(c), which is evaluated under the same standard. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78

9

F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are

central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

**B. Application**

As an initial matter, Plaintiff has agreed to dismiss his claims against DHS, conceding that as a state agency, DHS is entitled to immunity under the Eleventh Amendment to the United States Constitution. Pl.'s Resp. Br. 6. Plaintiff has also agreed to voluntarily dismiss his claim that Defendants violated 42 U.S.C. §§ 671 and 675. Pl.'s Resp. Br. 19-20. The Court accordingly dismisses these claims.

**1. Absolute Immunity**

Defendants assert that as social workers, they are entitled to absolute immunity with respect to Plaintiff's claims. "[A]bsolute immunity protects an official from liability even when the official acted with knowledge of the constitutional violation." *Gregory v. City of Louisville*, 444 F.3d 725, 738 (6th Cir. 2006) (citing *Briscoe v. LaHue*, 460 U.S. 325, 345, 103 S. Ct. 1108, 1120-21 (1983)). The Supreme Court has adopted a "functional approach" to determine whether an official is entitled to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S. Ct. 2606, 2613 (1993). Courts must look "to 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S. Ct. 538, 545 (1988)). "Those functions more 'intimately associated with the judicial phase of the criminal process' are more likely to merit careful consideration for absolute immunity." *Gregory*, 444 F.3d at 738 (quoting *Buckley*, 509 U.S. at 270, 113 S. Ct. at 2614). In determining which functions are "intimately associated with the judicial phase of the criminal process," *id.*,

"courts have made use of the distinction between prosecutorial and judicial duties and duties which are administrative or investigatory." *Achterhof v. Selvaggio*, 886 F.2d 826, 829 (6th Cir. 1989); *see also Gregory*, 444 F.3d at 738. The official claiming absolute immunity bears the burden of showing that immunity is justified for the function in question. *Buckley*, 509 U.S. at 269, 113 S. Ct. at 2613. "[S]ocial workers are absolutely immune only when they are acting in their capacity as legal advocates - initiating court actions or testifying under oath - not when they are performing administrative, investigative, or other functions." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir 2000) (en banc).

Plaintiff alleges that during the proceedings instituted to place his daughter into foster care, Henderson and Malburg failed to indicate to the trial court that Plaintiff's contact information was available through Lesley or her mother. The Sixth Circuit has held that information on a parent's whereabouts and willingness to participate in child custody proceedings is administrative information about the case, and thus, a social worker does not act as an advocate in withholding such information. *Holloway*, 220 F.3d at 776. The knowledge that Henderson and Malburg are alleged to have withheld here, that Lesley and her mother had Plaintiff's contact information, is similarly administrative in nature. Absolute immunity therefore cannot apply to this claim.

Plaintiff claims that Defendants failed to notify him that they had opened an investigation into a neglect complaint against Lesley and that their investigation subsequently confirmed neglect. It is difficult to imagine an activity more easily classified as investigatory than a social worker's opening of a neglect investigation. It is also clear

12

that the social worker's drawing of conclusions at the close of the investigation is properly considered an investigatory function. Because these actions fall outside the scope of legal advocacy, absolute immunity does not apply.

Plaintiff alleges that Defendants failed to offer him services that were offered to Lesley. The Court cannot see how a social worker's offering of services constitutes legal advocacy, and there is no indication that the trial court ordered the counseling programs at issue. The offering of such services is not a judicial or quasi-judicial function protected by absolute immunity.

Plaintiff also claims that Defendants failed to advise him accurately of his rights, as they repeatedly told him that his daughter could only be returned to Lesley. A social worker's lying to a parent about parental rights is not conduct "intimately connected with the judicial process" or otherwise within the scope of legal advocacy. *Id.* Accordingly, this conduct is not protected by absolute immunity.

Plaintiff further alleges that Defendants gave the Friend of the Court investigator false information about his ability to provide a suitable custodial environment for his daughter. Providing such information is akin to making recommendations to the court, a function that is "intimately related to the judicial phase of the child custody proceedings," and therefore protected by absolute immunity. *Rippy v. Hattaway*, 270 F.3d 416, 422-23 (6th Cir. 2001). Absolute immunity applies even to misrepresentations made in such a capacity. *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 725-26 (6th Cir. 2011). Plaintiff's claims relating to the provision of allegedly false information to the Friend of the Court investigator are therefore barred.

**2. Qualified Immunity**

Defendants assert that qualified immunity also bars Plaintiff's claims. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). To resolve a qualified immunity claim, the Court must determine if: (1) the plaintiff has alleged facts making out the violation of a constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 232, 129 S. Ct. at 815-16. The Court may exercise its discretion in determining which of the two prongs of this analysis to address first. *Id.* at 236, 129 S. Ct. at 818. "When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Back v. Hall*, 537 F.3d 552, 555 (6th Cir. 2008)).

Plaintiff asserts that Henderson and Malburg violated his procedural due process rights by withholding from the court the fact that Lesley and her mother had Plaintiff's contact information. "The right to procedural due process 'requires that when a State seeks to terminate [a protected] interest . . . it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 570 n.7, 92 S. Ct. 2701,

2705 n.7 (1971)) (alterations in original). Although Plaintiff had a right to notice of the proceedings instituted to place his daughter into foster care, it was the duty of the court to ensure that notice had been provided. *In re Rood*, 483 Mich. 73, 94, 763 N.W.2d 587, 599 (Mich. 2009) (citing Mich. Ct. R. 3.965(B)(1)). Neither Henderson nor Malburg had a clearly established duty to obtain Plaintiff's contact information and provide it to the court so that Plaintiff could be notified. These social workers therefore cannot be said to have deprived Plaintiff of his procedural due process rights. *See Pittman*, 640 F.3d at 730. The Court concludes that qualified immunity bars this claim.

Plaintiff argues that Henderson and Malburg's withholding of information also deprived him of the right to parent his daughter, a right protected by substantive due process. "It is clearly established that the Constitution recognizes . . . a substantive fundamental right to raise one's child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000). However, Plaintiff has not alleged facts sufficient for the Court to conclude that Henderson or Malburg violated this right. Only the trial court could deprive Plaintiff of the right to parent his daughter. *See* Michigan Compiled Laws § 712A.13a(10) ("In determining placement of a juvenile pending trial, the court shall order the juvenile placed in the most family-like setting available consistent with the juvenile's needs."); *see also Rood*, 483 Mich. at 95, 763 N.W.2d at 599. A social worker lacking this authority cannot be said to have deprived a parent of the right to raise his child. *Pittman*, 640 F.3d at 729 ("Because the juvenile court has the ultimate decisionmaking power with respect to placement and custody, it alone could deprive [the plaintiff] of his fundamental right."). Accordingly, qualified immunity applies to this claim.

15

Plaintiff asserts that Defendants violated his Fourteenth Amendment right to equal protection of the laws, but the Court cannot agree. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C.*, 641 F.3d at 681 (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). The plaintiff must demonstrate that another person who is similarly situated "in all relevant respects" was treated differently, and "that the adverse treatment [he] experienced was 'so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* at 682 (quoting *Warren v. City of Athens*, 411 F.3d 697, 710-11 (6th Cir. 2005)). "This showing is made either by negativing every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will." *Id.* Plaintiff states that his gender "was a factor in Defendants' decision to discriminate against him," Compl. ¶ 110, but provides no facts to substantiate this claim. He simply concludes, "[i]f Plaintiff had not been male, he would not have been treated in the manner described." *Id.* ¶ 115. Such conclusory assertions are plainly insufficient to state a claim for relief. Defendants apparently believed Lesley's accusations of physical abuse, but there is no indication that they did so simply because Plaintiff is male. There is also no indication that Defendants' choice to credit Lesley's allegations was based on animus or ill will toward Plaintiff. Plaintiff has therefore failed to allege facts upon which the Court could find a violation of his equal protection rights. Thus, qualified immunity bars Plaintiff's claim. *See Rondigo, L.L.C.,*

641 F.3d at 681.

Plaintiff claims that Defendants conspired to deny his right to equal protection of the laws, in violation of 42 U.S.C. § 1985. To succeed under § 1985, a plaintiff must show that: "1) the defendants conspired 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws'; and 2) the defendants committed acts that deprived the claimant 'of having and exercising any right or privilege of a citizen of the United States.'" *Bartell*, 215 F.3d at 559 (quoting 42 U.S.C. § 1985(3)). Because Plaintiff has failed to allege facts constituting a violation of equal protection rights, he also has not stated a violation of § 1985.

As for Plaintiff's claims that Defendants failed to offer him services and failed to advise him accurately of his rights, it does not appear that a clearly established statutory or constitutional right is at issue. The Court is unaware of any authority requiring Defendants to offer Plaintiff counseling programs, and Plaintiff has failed to cite any such authority. It is also not clear that Plaintiff has a statutory or constitutional right to be accurately advised of his parental rights by DHS caseworkers. Accordingly, qualified immunity bars these claims.

### 3. Plaintiff's State Law Claim

Defendants argue that Plaintiff's state law claim should be dismissed, as Michigan law does not provide a private right of action for damages to remedy a violation of the Michigan Foster Care Manual or the Michigan Probate Code, Michigan Compiled Laws § 712A.1 *et seq.* The Michigan Supreme Court has consistently refused to impose remedies

17

for statutory violations absent evidence of legislative intent, *see Lash v. City of Traverse City*, 479 Mich. 180, 193, 735 N.W.2d 636-37 (Mich. 2007), and the Court is unaware of any provision of state law granting such a private right of action. In his response brief, Plaintiff failed to cite such a provision. The Court therefore concludes that Count IX of the Complaint, "Violation of Michigan Law," must be dismissed.

### IV. Plaintiff's Request to Add a New Defendant

In his response to Defendants' motion to dismiss, Plaintiff seeks to add as a new defendant Maura Corrigan, Director of DHS. Plaintiff contends that he may assert claims for "equitable relief" against Corrigan in her official capacity. Pl.'s Resp. Br. 7. A party may amend its pleading once as a matter of course within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend only with the opposing party's written consent or the court's leave, but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts have discretion in granting leave to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). In the absence of any apparent or declared reason, such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment, leave to amend should be freely given. *Id.* "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

DHS, Henderson, Irwin, Meddaugh, Ford-White, and Wojnarowicz filed Answers on October 29, 2010, and Malburg filed her Answer on December 27, 2010. Plaintiff's

request to amend was made in his response to the motion to dismiss, on May 23, 2011. Thus, Plaintiff may not amend as a matter of course pursuant to Rule 15(a)(1).

The Court concludes that leave to amend should not be granted pursuant to Rule 15(a)(2). Plaintiff correctly asserts that he may bring a claim for injunctive relief against a state official in her official capacity pursuant to § 1983. *See Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 362-63 (1991). However, in each Count of his Complaint, Plaintiff seeks only "an injunction prohibiting any further acts of discrimination." *See*, *e.g.*, Compl. ¶ 85. Plaintiff has failed to demonstrated any likelihood of future discrimination. The Court concludes that leave to amend would be futile and must be denied.

## V. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for relief is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's request to amend his Complaint to add as a defendant Michigan Department of Human Services Director Maura Corrigan is **DENIED**.

                                          s/PATRICK J. DUGGAN
                                          UNITED STATES DISTRICT JUDGE

Copies to:
Rex A. Burgess, Esq.
Erik A. Grill, A.A.G.
Mark E. Donnelly, A.A.G.